PHILLIPSBURG TRANSIT COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT OF THE STATE OF NEW JERSEY AND THE INHABITANTS OF THE TOWN OF PHILLIPSBURG, DEFENDANTS.

Argued November 7, 1923—Decided March 25, 1924.

The Franchise Tax act of 1906, as amended by chapter 239 of the laws of 1918 (*Pamph. L., p.* 903), requires that every street railroad corporation subject to taxation thereunder shall report the gross receipts from its business in this state and that the tax shall be imposed upon such proportion of the gross receipts as the length of the line in this state bears to the length of the whole line. The "whole line" in the case of the Phillipsburg Transit Company includes that portion of the line extending from the center of the interstate bridge to Center Square, Easton, Pa., over which its cars are operated pursuant to a traffic agreement with the Easton Transit Company, which owns the tracks in Easton; and, hence, the Phillipsburg Transit Company is required to include in its statement or return to the state board of taxes and assessment the cash fares collected from interstate

passengers riding from Center square, Easton, into the State of New Jersey, even though, by such traffic agreement, all eastbound fares (from Easton into New Jersey) were to be taken by the Easton company in lieu of rent formerly paid.

On *certiorari*, &c.

Before Justices TRENCHARD and PARKER.

For the prosecutor, *W. H. Walters.*

For the state board of taxes and assessment, *Thomas F. McCran*, attorney general.

For the town of Phillipsburg, *Sylvester C. Smith, Jr.*

The opinion of the court was delivered by

TRENCHARD, J.   This writ brings up for review a judgment of the state board of taxes and assessment of the State of New Jersey (hereinafter referred to as the board), rendered in the following circumstances:

On February 17th, 1922, the town of Phillipsburg complained to the board that the return of gross receipts made by the Phillipsburg Transit Company under the Franchise Tax act of 1906, chapter 290, laws of 1906 (*Pamph. L., p.* 644), was incomplete in that it failed to show all of the gross receipts of the company within the meaning of the act.

The dispute arose as follows:

The company operates an electric street railway under a charter granted to the Phillipsburg Horse Car Railroad Company. This company changed its name in 1916 to Phillipsburg Transit Company. It operates in the town of Phillipsburg, Pohatcong township and the borough of Alpha, in Warren county. The system consists of the North Main street line, running from a terminus on the outskirts of Phillipsburg to Union square, a distance of about two and three-quarter miles, and the South Main street line, which runs from the borough of Alpha to Union square, a distance of about three and three-quarter miles. The cars on both of

these divisions run from Union square, in Phillipsburg, across the Delaware river bridge to Center square, in Easton, Pa. The distance from the center of the bridge, or the interstate line, to Center square, Easton, is about one-quarter of a mile. The tracks on the bridge are owned by the interstate bridge commission. The tracks in Easton, from the bridge to Center square, a distance of two city blocks, are owned by the Easton Transit Company. The Easton company owns all of the capital stock of the Phillipsburg company and the latter company has no franchise in the State of Pennsylvania.

Prior to January 1st, 1919, the Phillipsburg company operated its cars from the Pennsylvania end of the bridge to Center square in Easton on a rental basis. On December 23d, 1919, the two companies entered into a new operating agreement, effective as of the preceding January 1st. By this agreement it is provided that each company shall collect from every passenger boarding its cars in its territory the joint through interstate fares for the full trip within the city fare zones of both companies and shall retain the amount so collected. This arrangement, it was therein stated, was entered into in order to simplify accounting and because the number of interstate passengers traveling from Pennsylvania into New Jersey had been determined to be substantially equal to the number passing from New Jersey into Pennsylvania. (Assuming that the number of interstate fares collected in either direction exactly balanced the practical effect of the new arrangement was that each company received one-half of each interstate fare, or three and one-half cents.) The agreement further provides that each company shall pay all of its fixed charges and all taxes and assessments, and that the Phillipsburg company shall pay to the Easton company monthly its proportionate share, on a car-mileage basis, of the salaries of certain employees of the Easton company and certain expenses incurred by the Easton company for joint account. By the agreement the Easton company undertakes to operate cars of the Phillipsburg company from the interstate line, to and from Center square in Easton, the Easton company supplying the power and paying all operating expenses,

including the rentals for the use of the bridge. In actual operation, however, the motormen and conductors of the Phillipsburg company run the cars from New Jersey to Easton and thence back across the bridge to the termini in New Jersey. So far as the passenger is concerned there is no break or interruption of his journey across the bridge and no visible evidence of any change in the physical operation of the car from the time he begins until he ends his trip.

The ordinance by which the town of Phillipsburg granted to the Phillipsburg Horse Car Railroad Company permission to construct, operate and maintain a street railway expressly stipulated that a single fare only should be charged for a continuous ride between any two points within the limits of the town of Phillipsburg and the city of Easton upon a route of the Phillipsburg company and over the lines of any other company in Phillipsburg or Easton which might control or operate the Phillipsburg company or with which that company or its successors might have traffic arrangements.

By reference to the traffic agreement of 1919, and otherwise, it therefore appears that the old plan of paying rental to the Easton company for the use of the tracks in Easton was abandoned and the new plan was that all westbound fares were kept by the Phillipsburg company and all eastbound fares by the Easton company; so that instead of returning as "gross receipts" all the fares collected, the company since 1919 returned only the westbound fares, the eastbound fares being taken by the Easton company in lieu of the rent formerly paid.

The town of Phillipsburg contended before the board that the Phillipsburg company should be required to make a return for the assessment of the franchise tax based on gross receipts from passengers carried in New Jersey—that is, it should report the fares collected anywhere between Center Square and points in New Jersey. It contended that the allocation of all such fares to the Easton company, under the agreement above mentioned, resulted in a reduction of the New Jersey francise tax not warranted by the taxing statute. The board considered that this contention was well founded and entered judgment accordingly, and we think rightly.

Section 4 of the act of 1906, as amended by chapter 239 of laws of 1918 (*Pamph. L., p.* 903), provides: "Every street railroad corporation subject to taxation under the provisions of this act shall, on or before February first in each year, return to the state board of taxes and assessment a statement showing the gross receipts from its business in this state for the year ending December thirty-first next preceding, and any such corporation having part of its road in this state and part thereof in another state * * * shall make their report showing the gross receipts on the whole line, together with a statement of the length of the whole line and the length of the line in this state * * *, and the franchise tax of such corporation for the business done in this state shall be levied by the state board of taxes and assessment upon such proportion of its gross receipts as the length of the line in this state * * * bears to the length of the whole line."

Section 5 imposes an annual franchise tax of five per centum upon "the annual gross receipts of every street railroad corporation or upon such proportion of such gross receipts as the length of its line in this state * * * bears to the length of its whole line."

By that legislation "it was intended by the legislature to consider, in providing for this tax, the value of the franchise of the company to occupy the street, etc., with its tracks, and to impose a tax upon such franchise which should bear a relation to its value." *Phillipsburg Railroad Co.* v. *Board of Assessors,* 82 *N. J. L.* 49.

The value of the franchise in this case manifestly is enhanced by the Phillipsburg company's connection with the Easton company, and receipts resulting from that connection are a necessary factor in determining that value for the purposes of our franchise tax.

The Phillipsburg company claims that it had no legal right to run its cars in Pennsylvania, and that the allocation of receipts was decided upon as an equitable arrangement between the companies. That may be so. But such an arrangement cannot be permitted to run counter to the plain

provisions of the New Jersey statute. This statute requires that the corporation affected shall report the "gross receipts from its business in this state." The fares which are collected on the Phillipsburg cars after they leave Center square in Easton are from passengers whose destination is some point in New Jersey. It is for the business of carrying these passengers into and in New Jersey that the fares are paid. It is because the company has lines into and in this state that the fares are collected. It is immaterial whether the line from Center square to the middle of the Delaware river bridge is owned by the Easton company or the Phillipsburg company so far as this aspect of the case is concerned. Under the old plan (before the agreement of 1919) all fares collected were returned as gross receipts, and properly so. Under the old plan rent was paid to the Easton company. So it is now; but instead of a lump sum, or three and one-half cents out of every seven, it is the eastbound fares that constitute the rent, but they are none the less part of the gross receipts. If the fare limit were the center of the interstate bridge a different situation would be presented. But as the matter stands, the fare collected between Center Square, Easton and the interstate line is for service rendered by the Phillipsburg company in New Jersey, and it is enabled to render that service by the franchise granted to it by this state.

The return which the company is required to make is its "gross receipts." The return which it has made is not all of its gross receipts, but only that portion of its gross receipts which it has agreed with the Easton company fairly represent the share which it is entitled to receive under the traffic agreement. For the purpose of the Franchise Tax act such a return is incomplete. As already pointed out, that act requires a report of the *gross receipts from business in New Jersey.*

The only allocation of receipts permissible is that authorized by the act itself, namely, that the tax shall be imposed upon such proportion of the gross receipts as the length of the line in this state bears to the length of the whole line. The question is, what are the gross receipts of the whole line?

The "whole line" in the case before us includes that portion of the line extending from the center of the interstate bridge to Centre square in Easton. While that section of the road is not owned by the Phillipsburg company, it is a part of the line or system extending beyond the state, and must be so considered in assessing the franchise tax.

The prosecutor makes an argument based upon what it says was recognition of the agreement of 1919 by the board of public utility commissioners. With that we are not now concerned. We point out, however, that the utility board was concerned with *net return* as an element to be considered in fixing a rate of fare, while here we are concerned with a different matter, namely gross receipts from business in this state.

The judgment brought up will be affirmed, with costs.